# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHISN DISTRICT OF GEORGIA
# ATLANTA DIVISION

T.C., by and through his natural parent and guardian, F.A.,

    Plaintiffs,

v.

ATLANTA PUBLIC SCHOOL

    Defendants.

Civil Action No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, T.C, a minor, by F.A., his natural guardian, sues Defendant Atlanta Public Schools (APS), and alleges:

## NATURE OF THE ACTION

1. This is an action brought to redress the deprivation, under color of policy, regulation, official decision, custom, or usage, of rights secured to Plaintiff by 42 U.S.C. § 1983 and arising under the Fourteenth Amendment to the United States Constitution, violations of the Americans with Disabilities Act and Section 504

of the Rehabilitation Act of 1973, as well as for state law claims, and for such other relief as the Court deems just and proper.

2. Plaintiff T.C, is a disabled, non-verbal 21-year-old, who was 19-years-old at the time of the incident, who suffers from autism, ADHD, and intellectual disability. Prior to the abuse that gives rise to this lawsuit, T.C, was a successful student who was making progress toward achieving his educational goals, despite his profound developmental disability and behavioral challenges. Since this incident, the claimant developed permanent and severe anxiety, loss of appetite and post-traumatic stress for which he is currently being treated with, among other things, prescription drugs.

Consequently, L.R suffer from the effects of the abuse to which he was unlawfully subjected by Defendants.

## PARTIES AND NON-PARTIES

3. The undersigned counsel has kept the identity of the Plaintiffs confidential by referring to initials, rather than putting their names on the public record. The full identities of T.C, and F.A., are well known to Defendants.

4. At all times material hereto, Plaintiff, T.C, and F.A., his natural guardian, have been residents of Fulton County, Georgia.

5. At all times material hereto, T.C, was a mentally disabled student who attended

Phoenix Academy in Atlanta was diagnosed with spectrum autism disorder, ADHD, and intellectual disability; he was non-verbal; and he was a special education student entrusted to the care of Defendant Atlanta Public School.

6. Atlanta Public Schools Board of Education is a governmental body, organized under the laws of the State of Georgia, the governing body of APS, and responsible for the control, operation, organization, management, administration, and supervision of schools in Fulton County, Georgia. APS Board is identified for reference purposes only and is not a named Defendant in this action.

7. At all times material hereto, APS Board and APS were recipients of federal financial assistance by virtue of their receipt of funds from the United States Department of Education.

8. Atlanta Public Schools ("APS") is a public-school district, organized under the laws of the State of Georgia and operating under the authority of the State of Georgia. APS is part of the state system of public education and is the governing body for public schools in Fulton County, Georgia. Service for APS can be made at its administrative office located at 130 Trinity Avenue, Atlanta, Fulton County, Georgia 30303.

9. At all times material hereto, APS's responsibilities included, but were not limited to:

a. establishing, implementing and/or enforcing policies and procedures for public schools within Fulton County, Georgia;

b. training, supervising and/or disciplining its employees, including administrators, investigators, principals, assistant principals, instructors, teachers, and/or aides;

c. implementing policies, customs, and/or practices that prohibited said employees from violating the constitutional, statutory, and civil rights of its students; and

d. training, supervising and/or disciplining its employees to ensure the welfare and safety of all students enrolled in public schools within Fulton County, Georgia.

## **JURISDICTION**

10. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1331, 1343 because Plaintiff's claims arise under the civil rights laws of the United States and 28 U.S.C. § 1367 because all other claims are so related as to form the same case or controversy.

11. This is an action involving claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

12. This Court has personal jurisdiction over the parties to this action because Plaintiffs subject themselves to this Court's jurisdiction and because the Defendants committed the civil rights violations and tortious acts at issue herein this state.

## VENUE

13. Venue of this action is properly in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the judicial district of this Court, and Defendants are subject to the Court's personal jurisdiction with respect to this civil action.

## CONDITIONS PRECEDENT

14. Plaintiff has satisfied all conditions precedent to bringing this action, includingproviding notice of these claims as required by O.C.G.A. § 36-11-1.

## FACTS

15. This civil action arises out of the negligence of Defendants whose actions were the sole and proximate cause of the Simple Battery and Assault that occurred on October 3, 2022 and November 17, 2022.

16. On November 18, 2022 at approximately 08:50 am, officer C White, Badge #9812, responded to a call at 256 Clifton St. NE, Atlanta, GA 30317

concerning an information report. His narrative explains that he was informed by Ms. Ameen, parent of Tuan Charles, that her child was "allegedly abused."

Ms. Ameen stated she received a call from two teachers that worked at Phoenix Academy, informing her that an incident had happened on November 17, 2022 and that a teacher has been "abusing [her] son since October 3rd, 2022.

17. On October 3, 2022 Ms. Coreane High, allegedly snatched student Charles by his shirt and pulled him out of his seat. An email was sent on October 4, 2022 to the school administration about this incident, however, it was ignored for the entire month of October.

18. Plaintiff Charles has delayed speech and, therefore, he could not communicate clearly with his mother what had happened to him, although his behavior had changed since the date of the incidents.

19. Plaintiff Ameen was informed, by the way of emails and phone calls, that Defendant High had been allegedly abusing Plaintiff Charles and other special needs students during a school field trip at the zoo on November 17, 2022, and that her actions were threatening and so unacceptable that the zoo representative requested that Ms. High not come back anymore.

20. It was also report that a co-worker of Defendant High had to confront and

stop Ms. High from "jumping" in the Plaintiff Charles' face.

21. Since the incident, the Plaintiff T.C has exhibited explosive behavior and outbursts especially when he is in confined spaces like a car or bathroom.

22. At all times material hereto, T.C, had been diagnosed with autism spectrumdisorder, ADHD, and intellectual disability.

23. These impairments substantially limit T.C's ability to engage in numerous major life activities including caring for himself, performing manual tasks, eating, speaking, learning, reading, concentrating, thinking, communicating, and interacting with others.

24. At all relevant times, T.C was non-verbal. As a result of his disabilities, T.C, was eligible to receive and received publicspecial education services.

25. At all relevant times material hereto, T.C, was on an Individual Education Plan("IEP") designed to meet his individual needs.

26. His IEP designated his primary exceptionalities as, variously, "Significant Developmental Delay" and "Autism."

27. His IEP designated his secondary exceptionality as "Speech/Language Impairment."

28. Nevertheless, at all times material hereto, special education teachers at APS occupied a special custodial relationship with the special education students

in their classroom, including T.C, due to their disabilities.

29. As a result of this special custodial relationship, special education teachers had an affirmative duty to ensure that said students were provided with, and received, a safe, quality education, free from excessive physical or verbal abuse, corporal punishment, and unlawful restraint.

30. However, while T.C was a special education student in an APS, he was physically abused, and improperly and/or excessively restrained against his will.

31. In fact, his guardian. F.A., however, observed concerning changes in his as his behavior regressed both at home and at school.

32. He would frequently cry and became increasingly aggressive, kicking and throwing objects.

33. He began having anxiety attacks and was eventually diagnosed with anxiety disorder and given a prescription for Zoloft.

34. The conduct of Defendant is sufficient to render it liable for the conduct and answering for punitive damages.

35. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against this Defendant and further his demand interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

## COUNT I
## EQUAL PROTECTION
## PURSUANT TO 42 U.S.C. § 1983
## AGAINST ATLANTA PUBLIC SCHOOLS

36. Plaintiffs incorporate by reference the preceding paragraphs as if fully restatedherein.

37. This count is brought pursuant to Title 42 U.S.C. § 1983.

38. This is a civil rights action for money damages arising from the Defendant's deprivation, under color of state law, of Plaintiff's right to equal protection of thelaws under the Fourteenth Amendment to the United States Constitution.

39. The Federal Education for All Handicapped Children Act ("EAHCA"), 20 U.S.C. § 1400, et seq., and the regulations promulgated thereunder, provide that to receive federal assistance, the State must demonstrate that it has in effect a policy that assures all handicapped children the right to a public education free of physical or verbal abuse and unlawful restraint.

40. T.C is, and at all times material hereto was, a member of an identifiable class of non-verbal, disabled students and was subjected to disparate treatment by Defendant.

41. T.C, and other members of the identifiable class of nonverbal, disabled students were intentionally treated differently than other verbal and/or non-disabled students because of their disabilities and because they were

vulnerable, defenseless children, lacking an ability to speak out against, report, or otherwise stop the physical and verbal abuse and unlawful restraint against them.

42. Defendant violated T.C's constitutional right to equal protection by:

   a. Failing to establish, implement, or enforce policies and/or procedures within APS so as to allow a custom, policy, or practice that allowed APS employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides to violate the constitutional and civil rights of students, including T.C;

   b. Failing to establish, implement or enforce policies and/or procedures within APS regarding training, supervising, and/or disciplining APS employees including administrators, investigators, principals, assistant principals, instructors, and/or aides in the reporting of child abuse, so as to allow APS employees to violate the constitutional and civil rights of students, including T.C;

   c. Failing to adequately and appropriately respond to reports of child abuse within APS, so as to allow constitutional and civil rights violations against students, including T.C;

   d. Failing to adequately train and/or supervise APS employees, including

    administrators, investigators, principals, assistantprincipals, instructors, and/or aides to identify and properly report instances of disparate treatment so as to allow constitutional and civil rights violations against students, including T.C

e. Overlooking, ignoring, and/or disregarding child abuse against non-verbal disabled students within APS so as to allow a custom, policy and/or practice to exist wherein APS employees including, administrators, investigators, principals, assistantprincipals, instructors, and/or aides violated the constitutional and civil rights of students, including T.C;

f. Cultivating a culture and atmosphere of intimidation within the APS wherein APS employees including, administrators, investigators, principals, assistant principals, instructors, and/or aides feared stopping, assisting with, or reporting constitutional and civil rights violations of students, including T.C and/or

g. Authorizing, encouraging or instructing APS employees including, administrators, investigators, principals, assistant principals,instructors, and/or aides not to stop, assist with, or report constitutional and civil rights violations of students, including T.C

43. Defendant's failure to correct the disparate treatment of nonverbal, disabled students, including T.C, rose to the level of a longstanding custom, policy or practice of the Defendant to tolerate or ignore the same, by tacitly authorizing, or being deliberately indifferent to, the unconstitutional conduct which Defendant had actual or constructive knowledge was occurring within its classrooms.

44. Defendant's failure to establish, implement or enforce policies and/or practices within APS that allowed for the equal treatment of students rose to the level of a custom, policy and/or practice of the Defendant tohide, or turn a blind eye to, constitutional violations against said non-verbal, disabled students, including those violations inflicted upon T.C

45. Defendant was deliberately indifferent to, permitted and/or tolerated a historical pattern and practice of disparate treatment of non-verbal, disabled students, such as T.C, which was unjustifiable by any governmental interest, done with malice as well as shocking to the conscience.

46. In sum, Defendant – by way of custom, policy, or procedure – allowed its employees to treat non-verbal, disabled students entrusted to their care differently(and more harmfully) than its verbal and/or non-disabled students without justification of any legitimate government interest.

47. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against this Defendant and further this demand interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other relief as the Court deems appropriate.

## COUNT II
## DEPRIVATION OF EDUCATION
## PURSUANT TO 42 U.S.C. § 1983
## AGAINST ATLANTA PUBLIC SCHOOLS

48. Plaintiffs incorporate by reference the preceding paragraphs as if fully restated herein.

49. This count is brought pursuant to Title 42 U.S.C. § 1983.

50. This is a civil rights action for money damages arising from the Defendant's deprivation, under color of state law, of T.C's constitutional civil rights and his Fourteenth Amendment due process property interest in education and equal protection to receive a public school education.

51. T.C may not be deprived of his education without due process.

52. T.C may not be deprived of his education based on his membership in an identifiable class subject to intentionally disparate treatment by the Defendant.

53. As described above and below, T.C is a non-verbal, disabled student who was subject to intentionally disparate treatment from verbal and/or non-disabled students.

54. Upon information and belief, there was no formal procedure at all involving or within APS, let alone involving T.C's family, to determine how best to address T.C's continued enrollment at APS's Phoenix Academy.

55. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demand interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such oth relief as the Court deems appropriate.

### COUNT V
### DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AGAINST ROCKDALE COUNTY PUBLIC SCHOOLS

56. Plaintiffs incorporate by reference the preceding paragraphs as if fully restated herein.

57. This count is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12132, *et seq*.

58. At all times material hereto, T.C was a "qualified individual with a disability," as defined by 42 USC § 12132(2).

59. At all times material hereto, Defendant was a "public entity," as defined by 42 USC § 12132(1).

60. Pursuant to 42 USC § 12132, "no qualified individual with a disability shall,

by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjectedto discrimination by any such entity."

61. Defendant failed in its responsibility to ensure that educational services are provided on an equal basis to children with disabilities, such as T.C, and free of hostility toward their disability.

62. Defendant's acts and omissions subjected students, including T.C, to a hostile educational environment and deprived said students of the benefit of an education, based on their disability.

63. As a direct and proximate cause of Defendant's failure to comply with its responsibility under the Americans with Disabilities Act, Plaintiff has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

64. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a(2)(b), and such other relief as the Court deems appropriate.

## COUNT VI
## VIOLATION OF § 504 OF THE REHABILITATION ACT OF 1973 AGAINST ATLANTA PUBLIC SCHOOL

T.C., by     and   through his naturalparent and guardian, F.A., v. Atlanta Public Schools
*Complaint for Damages*

65. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

66. This count is brought pursuant to § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504").

67. Section 504 and the regulations promulgated thereunder prohibit discrimination against persons with disabilities and the exclusion from, participation in, or denial from the benefits of, or being subjected to discrimination under, any program or activity receiving federal financial assistance.

68. At all times material hereto, Defendant was a recipient of federal financial assistance and used federal financial assistance to fund the operations, construction and/or maintenance of the specific public facilities described herein, and the activities that take place therein.

69. By its actions or inactions in denying equal access to educational services and by subjecting T.C to a hostile educational environment, Defendant violated L.R's rights under § 504 and the regulations promulgated thereunder.

70. As a direct and proximate cause of Defendant's failure to comply with its responsibilities under § 504 and the regulations promulgated thereunder, T.C has suffered damages, pain and suffering, loss of enjoyment of life, emotional damages up to and including severe anxiety and post-traumatic stress disorder, and/or past and future medical expenses.

71. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against this Defendant and further demands interest, costs, and attorney's fees, pursuant to § 794a(2)(b), and such other relief as the Court deems appropriate.

72. WHEREFORE, Plaintiffs demand trial by jury, judgment for damages, to include punitive damages, against these Defendants and further demands interest,costs, and such other relief as the Court deems appropriate

Respectfully Submitted, This 1st day of October, 2024.

Respectfully submitted,

/s/ Lakiesha S. Fair
Lakiesha S. Fair,
Georgia State Bar Number.: 238150
*Attorney for Plaintiff*

**THE FAIR LAW FIRM, L.L.C**
320 W. Lanier Ave.
Suite 200
Fayetteville, Georgia 30214
Phone: (470) 627-0404
Fax: (770) 282-8783
Lakiesha@LakieshaFairLaw.com